UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

KENNEDY D. WELCH,

    Petitioner,

v.                                  CASE NO:  5:12-cv-367-Oc-23PRL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS
and FLORIDA ATTORNEY GENERAL,

    Respondents.

_____/

**ORDER**

A prisoner at the Reception and Medical Center in Lake Butler, Florida,

Kennedy D. Welch, applies under 28 U.S.C. § 2254 for a writ of habeas corpus.

(Doc. 1).  The respondent opposes the application.  (Doc. 9).[1]

**I. Background and procedural history**

On July 14, 2009, in the Circuit Court for Marion County, Florida, a jury

convicted Welch of aggravated battery with a deadly weapon.  (Ex. A at 43, 66).[2]

Welch was sentenced to ten years in prison.  (Ex. A at 65–74).  Welch's conviction

---

[1] Because Welch's claims require no further factual development, an evidentiary hearing is unnecessary. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).

[2] Unless otherwise noted, an exhibit citation refers to an exhibit filed by the respondent on October 23, 2012. (Doc. 11). A citation to the trial transcript in Exhibit A is cited as (T. at __). A citation to the evidentiary hearing in Exhibit F, is cited as (EH at __).

and sentence were affirmed *per curiam* in *Welch v. State*, 38 So. 3d 154 (Fla. 5th DCA 2010).

Welch moved under Rule 3.850, Florida Rules of Criminal Procedure, (the Rule 3.850 motion) for post-conviction relief.  (Ex. F).  He raised three claims of ineffective assistance of counsel.  After an evidentiary hearing, the post-conviction court denied all relief (Ex. F at 159–68), which was affirmed *per curiam* in *Welch v. State*, 77 So. 3d 200 (Fla. 5th DCA 2011).

In the instant petition, Welch alleges that trial counsel was ineffective (1)  for failing to impeach the victim with prior inconsistent statements, (2) for failing to effectively cross-examine the crime scene technician, and (3) for failing to impeach witness Mario Zarate with prior inconsistent statements.  (Doc. 1 at 5–9).  Welch also asserts that the post-conviction court erred by denying his motion for appointment of counsel at the evidentiary hearing on his Rule 3.850 motion.  (Doc. 1 at 11).

## II. Governing legal principles

### a. The Antiterrorism Effective Death Penalty Act (AEDPA)

Under 28 U.S.C. § 2254(d), federal habeas relief is unavailable with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

This standard is both mandatory and difficult to meet.  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits, which warrants deference.  *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).  "Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, in the decisions of the United States Supreme Court at the time of the state court decision.  *White*, 134 S. Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  A decision is "contrary to" clearly established federal law if the state court either (1) applies a rule that contradicts the governing law set forth by the Supreme Court or (2) reaches a result different from a decision of the Supreme Court based on materially indistinguishable facts.  *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies the principle to the facts of a case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from

[Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75–77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17–18; *Ward,* 592 F.3d at 1155. A petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 786–87 (2011)).

Finally, the Supreme Court has stated that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) (dictum). When reviewing a claim under Section 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1*); see, e.g.*, *Burt v. Titlow*, 134 S. Ct. 10, 15–16 (2013); *Miller–El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by

AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

### b. Ineffective assistance of counsel

Under *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984), to establish that his counsel rendered ineffective assistance, the petitioner must establish that counsel's deficient performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.  This is a "doubly deferential" standard that extends to both the state court and the petitioner's attorney the benefit of the doubt.  *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under the performance component of *Strickland* is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688–89.  A strong presumption attaches that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  Indeed, the petitioner must "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny.  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

The prejudice component of *Strickland* "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### III. Analysis

### a. Claim one

Welch asserts that defense counsel was ineffective because she failed to impeach the victim with an inconsistency between the victim's statements in an application for a restraining order against Welch and the victim's statements at trial.[3]  (Doc. 1 at 5). Specifically, Welch notes that in a sworn application for a restraining order the victim attested that Welch beat and kicked him in the head before Welch began slashing at him with a knife.  (Ex. F at 4).  In contrast, at trial the victim testified that Welch slapped him before Welch began slashing at him with a knife.  (Ex. F at 5).

Welch raised this claim in his Rule 3.850 motion, and an evidentiary hearing was held.  The post-conviction court, recognizing *Strickland* as the controlling law, denied the claim.  (Ex. F at 162–64).  The post-conviction court found, based on the

---

[3] The victim sought a restraining order against Welch in response to the same conduct that resulted in the criminal charges against Welch. (Ex. F at 184).

- 6 -

defense counsel's testimony, that defense counsel chose not to impeach the victim with

the victim's prior statement because defense counsel wanted to avoid drawing

unfavorable attention to the more egregious conduct described in the victim's

injunction affidavit.  (Ex. F at 163).  The court stated:

> The court rejects the State's argument on this claim that the
> inconsistency is "nit-picking" and that there is no material difference
> between being slapped and being kicked in the head. This court believes
> there is a substantial difference between the two acts. Nonetheless, the
> defendant still slashed the victim with a knife afterwards, and in light of
> the evidence and the nature of the statements, the inconsistency, if
> highlighted by the defense, may have reminded the victim that he was
> indeed kicked rather than slapped, may have been more detrimental to
> the defendant [than] helpful, [and] would not likely have had any effect
> whatsoever on the outcome of the trial. Moreover, it was a reasonable
> strategic decision within the norms of professional conduct.

(Ex. F at 163).  The post-conviction court's rejection of this claim was affirmed by

Florida's Fifth District Court of Appeal.  *Welch*, 77 So. 3d at 200.  Welch does not

explain how the state court's rejection of this claim was contrary to *Strickland* or was

based upon an unreasonable determination of the facts.  The record supports the state

court's conclusions.

At the evidentiary hearing on this claim, trial defense counsel, Heather Pastoor,

was shown the inconsistencies between the victim's statements in the application for a

restraining order and the statements at trial.  (EH at 19).  Pastoor noted that the basic

activity at issue — physical force followed by use of a knife — was present in both of

the victim's statements.  (EH at 19–20).  Pastoor stated that the events described in the

restraining order sounded worse than those to which the victim testified at trial and

that strategically, she would have avoided mentioning the inconsistency because "kicking [the victim] is worse than slapping him." (EH at 19, 21).

In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment.'" *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). "The inquiry into whether a lawyer has provided effective assistance is an objective one — a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1322 (11th Cir. 2002); *Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision . . . appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it."). A habeas petitioner must overcome a presumption that the challenged conduct of his counsel was a matter of strategy. *Strickland*, 466 U.S. at 689; *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). A defendant's mere disagreement with counsel's tactics or strategy will not support a claim of ineffective assistance of counsel.

Welch has not demonstrated that Pastoor's decision not to impeach the victim with the victim's earlier inconsistent statement was anything other than reasonable trial strategy. *Strickland*, 466 U.S. at 689; *Perry*, 908 F.2d at 59. Moreover, as noted by

Pastoor at the evidentiary hearing, each of the victim's statements was clear that

Welch first used physical force and next used a knife.  (EH at 19–20).  In fact, Welch

testified at trial that he punched the victim and then slashed at him with a knife.

(T. at 116).[4]  Welch also testified at trial that he kicked the victim after the victim fell

to the ground.  (T. at 123).  Welch fails to show that the jury would have returned a

different verdict if counsel had impeached the victim about the details of the

altercation that preceded use of the knife.  Therefore, claim one fails to satisfy either

part of the *Strickland* test.

Welch fails to meet his burden of proving that the state court unreasonably

applied *Strickland* or unreasonably determined the facts in rejecting this claim.  The

claim is denied under 28 U.S.C. § 2254(d).

### b. Claim two

Welch asserts that trial counsel was ineffective for failing to use a medical report

from the hospital where the victim was treated to refute the crime scene technician's

testimony that included the words "incision," "clearly edge cut," and "jagged cut" to

describe photographs of the victim's injuries.  (Doc. 1 at 7).  Welch asserts that the

technician's testimony implied that the injuries were caused by a knife whereas the

---

[4] Welch testified at trial that the victim, his father, drew the knife first and that he
acted in self-defense. (T. at 116).

medical report stated that all of the victim's injuries were caused by road abrasions and

lacerations.  (Doc. 1 at 7).

Welch raised this claim in his Rule 3.850 motion, and an evidentiary hearing

was held.  After the hearing, the post-conviction court denied the claim and concluded

that Pastoor reasonably and strategically decided to de-emphasize the victim's injuries

in an attempt to persuade the jury to return a verdict on the lesser-included offense of

misdemeanor battery.  (EH at 164–65).  The post-conviction court next noted that,

contrary to Welch's assertions, the medical report did not limit the cause of the

victim's injuries to "road rash."

> The victim had fallen to the pavement at the bus station where this
> incident occurred. Although the report made reference to "road rash" in
> the section identifying "scrapes and abrasions," the report indicates the
> attending authority was listing a variety of injuries the victim suffered,
> and included "contusions," "deep bruises," and a "concussion." The
> court reviewed the medical report and it indicated in the history section
> that the victim had been "assaulted by son," "kicked in head," "small
> laceration on head," "has cut with box knife." Then Ms. Pastoor
> testified that even had she had the proper witness to testify and
> introduce the report into evidence at trial, the contents of the document
> could have been more damaging than helpful.

(EH at 164–65).  Finally, the post-conviction court concluded that Welch could not

demonstrate prejudice as a result of Pastoor's failure to introduce the medical report

because nothing suggested that the report "or the testimony of the attending physician

who prepared the report would have affected the outcome of the trial."  (EH at 165).

The post-conviction court's rejection of this claim was affirmed by Florida's Fifth

District Court of Appeal.  *Welch*, 77 So. 3d at 200.  Welch fails to explain how the

state court's rejection of this claim was contrary to *Strickland* or was based upon an unreasonable determination of the facts.  A review of the record supports the state court's conclusions.

At Welch's trial, crime scene technician Brenda Yanick testified that she collected evidence and photographed the crime scene, including the victim's wounds. (T. at 88).  Yanick (a) described a photograph of the victim's shirt as portraying "an actual incision" (T. at 92), (b) described a photograph of the top of the victim's head as showing a "very cleanly-edged cut" that was still bleeding (T. at 93), (c) described an injury to the victim's face as a "cut but it was very jagged" (T. at 93), and (d) described another photograph of the top of the victim's head as showing "the one incision." (T. at  95).  Yanick was not asked, and did not offer an opinion on, how the victim obtained his injuries.  On cross-examination, Yanick affirmed that she was not a witness to the altercation between Welch and the victim and that she did not know how the victim was injured.  (T. at 97).  During closing argument, Pastoor stressed that Yanick was not present at the fight between Welch and the victim and, therefore, Yanick could not testify about the events that occurred.  (T. at 159).  Pastoor also argued that the victim sustained most of his injuries from his fall to the ground. (T. at 166).  During the state's closing argument, the prosecutor stated that the victim was "relatively unscathed . . . walked away relatively uninjured." (T. at 172).

At the evidentiary hearing, Pastoor testified that one of the defense's goals was to obtain from the jury a verdict of misdemeanor battery and that "highlighting the injuries would have only drawn attention to the injuries themselves, which wouldn't necessarily go to serve our misdemeanor goal." (EH at 23). Pastoor stated that she saw no point in quibbling with the crime scene technician over the technician's description of an injury because the technician had no interest in the case. (EH at 22). Pastoor noted that, "[Yanick] was there; she took pictures; she was doing her job. She's obviously a professional. And generally unless you need to attack or discredit the credibility of such a person, it didn't necessarily serve our interest in doing so." Pastoor also noted that she could not impeach a witness with someone else's statement and that the person who wrote the medical report did not testify at Welch's trial. (EH at 22).

Welch provides no argument to overcome the presumption that Pastoor's decision to limit her cross examination of Yanick was sound trial strategy. *See Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998) ("The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct."). Counsel could reasonably conclude that highlighting the extent and cause of the victim's injuries would undermine the defense's goal of limiting the verdict to the lesser included offense of misdemeanor battery. Moreover,

as the post-conviction court noted, Yanick stated that she was not present during the altercation between Welch and the victim, and even the prosecutor stated that the victim's injuries were minor.  Accordingly, this claim also fails to satisfy the prejudice part of *Strickland*'s test.

Because Welch fails to show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting this claim, the claim is denied under 28 U.S.C. § 2254(d).

#### c. Claim three

Welch asserts that trial counsel was ineffective for "not impeaching witness Mr. Mario Zarate with prior inconsistent statements and the inconsistencies with the victim's restraining order statements."  (Doc. 1 at 9).  In his Rule 3.850 motion, Welch argued that Zarate told the police that "the Defendant began to chase the victim, the victim attempted to run away from the Defendant, but was caught in the parking lot of the bus station, as the Defendant caught the victim, and he proceeded to hit, punch, and kick the victim repeatedly.  The victim fell to the ground in the parking lot and the Defendant continued to beat him."  (Ex. F at 8–9).  Welch asserts that at trial, Zarate testified that, "then I heard some yelling outside the station, I couldn't see exactly what was happening.  But then a minute later the Defendant started running after his father and I called the police, then I saw that the Defendant was beating him up."  (Ex. F at 9).  In the victim's application for a restraining order, the victim stated that

- 13 -

"the person that sold me the ticket [Zarate] could not believe what happened." (Ex. F at 9). Welch asserts that if counsel had pointed out these inconsistencies, "the jury would not have given weight to Mr. Zarate's testimony and the outcome of the trial could have been different." (Ex. F at 9).

Welch raised this claim in his Rule 3.850 motion. After an evidentiary hearing, the post-conviction court rejected this claim. The court determined that Welch's primary question at the evidentiary hearing was why Pastoor "had not used the injunction obtained by the victim, and the statement by Mr. Zarate to the police, to impeach Mr. Zarate at trial." (Ex. F at 166). The court noted that Pastoor had explained that under Section 90.608(1), Florida Statutes, Pastoor could not use the victim's prior statement to impeach Zarate. (Ex. F at 166–67). The court also noted that none of the statements at issue were inconsistent:

> [T]he statement by Mr. Zarate that he couldn't believe what happened is not in any way inconsistent with anything in the police report or anything else; rather, it is a general statement not attributed to anything specifically, and is not a basis for any impeachment. A prior statement is only admissible to impeach the credibility of a witness if it is in fact inconsistent with the trial testimony of the witness, and it is a material inconsistency or a direct contradiction. *State v. Hoggins*, 718 So. 2d 761, 771 (Fla. 1998); *James v. State*, 765 So. 2d 763 (Fla. 1st DCA 2000); *Smith v. State*, 754 So. 2d 54, 56–57 (Fla. 3d DCA 2000); *Guidinas v. State*, 693 So. 2d 953, 964 (Fla. 1997); and *Owens v. State*, 817 So. 2d 1006, 1008 (Fla. 5th DCA 2002).

(Ex. F at 166–67). The post-conviction court's rejection of this claim was affirmed by Florida's Fifth District Court of Appeal. *Welch*, 77 So. 3d at 200. Welch fails to explain how the state court's rejection of this claim was contrary to *Strickland* or was

based upon an unreasonable determination of the facts.  A review of the record supports the state court's conclusions.

At the evidentiary hearing, Welch asserted that the victim's application for a restraining order "shows that [Zarate] didn't see nothing."  (EH at 14).  Welch testified that Zarate allegedly told the victim that "he couldn't believe what had happened" which must have meant that he did not see the altercation.  (EH at 14).  When Welch questioned why Pastoor did not "bring the injunction to impeach Mr. Zarate and use the police report," Pastoor responded that she could not impeach a witness with someone else's statement, and even if she could, the statement was too vague to use for impeachment and was not inconsistent with Zarate's testimony.  (EH at 34).  As to any alleged discrepancy between the police report and Zarate's testimony at trial, Pastoor testified that the two statements followed "the same series of facts that [the victim] was physically punched or kicked" and that Zarate indicated that "he could not be clear based on his viewpoint."  (EH at 35).

A party may attack the credibility of a witness by introduction of a prior statement that is inconsistent with a witness's present testimony.  Fla. Stat. § 90.608(1); *Kimble v. State*, 537 So. 2d 1094, 1096 (Fla. 2d DCA 1989) ("A party can impeach the credibility of a witness called by an adverse party by introducing that witness's prior statements which are inconsistent with his present testimony.").  However, this rule of evidence does not apply to a prior statement of another party.

Accordingly, counsel was not ineffective for failing to introduce the victim's application for a restraining order in an attempt to impeach Zarate. Likewise, as the post-conviction court noted, in order to introduce a prior inconsistent statement, the prior statement "must either directly contradict or be materially different from the expected testimony at trial. The inconsistency must involve a material, significant fact rather than mere details." *Pearce v. State*, 880 So. 2d 561 (Fla. 2004).

The post-conviction court reasonably determined that none of Zarate's statements were "materially different." The conclusion that counsel was not ineffective for failing to impeach Zarate at trial was neither contrary to *Strickland* nor based upon an unreasonable determination of the facts. Claim three is denied under 28 U.S.C. § 2254(d).

### d. Claim four

Welch asserts that the post-conviction court abused its discretion by failing to appoint counsel at the post-conviction evidentiary hearing and that Welch's lack of counsel meant that he was "incapable of arguing points of law against the prosecutor who are [sic] experts in their field." (Doc. 1 at 11).

Under 28 U.S.C. § 2254(a), a petitioner can file a federal habeas challenge to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Federal habeas relief is available to remedy defects in a defendant's conviction and sentence, but "an alleged defect in a

collateral proceeding does not state a basis for habeas relief." *Quince v. Crosby*, 360

F.3d 1259, 1262 (11th Cir. 2004); *Carroll v. Sec'y, Dep't of Corr.*, 574 F.3d 1354, 1365

(11th Cir. 2009).  Moroever, "[t]here is no constitutional right to an attorney in state

post-conviction proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)

(citations omitted); *Pennsylvania v. Finley*, 481 U.S. 551, 555–56 (1987) (recognizing

that a prisoner has no due process right to appointed counsel in a post-conviction

proceeding).  Under this precedent, claim four is not cognizable on federal habeas

review and does not warrant habeas relief.

Any allegation not specifically addressed is without merit.

### IV. Certificate of appealability

Welch is not entitled to a certificate of appealability.  A prisoner seeking a writ

of habeas corpus has no absolute entitlement to appeal a district court's denial of his

petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of

appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a

substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

To make such a showing, a petitioner must demonstrate that "reasonable jurists would

find the district court's assessment of the constitutional claims debatable or wrong,"

*Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473,

484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to

proceed further.'"   *Miller–El*, 537 U.S. at 335–36.   Welch has not made the requisite

showing in these circumstances.

Because Welch is not entitled to a certificate of appealability, he is not entitled

to appeal *in forma pauperis.*

### V. Conclusion

All claims in Welch's petition for writ of habeas corpus are denied under 28

U.S.C. § 2254(d).   This action is **DISMISSED WITH PREJUDICE**.   Welch is

**DENIED** a certificate of appealability and **DENIED** leave to proceed on appeal *in*

*forma pauperis*.   The clerk must dismiss the Florida Attorney General as a named

respondent, terminate any pending motion, enter judgment against Welch, and close

this case.[5]

ORDERED in Tampa, Florida, on November 10, 2014.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[5] Welch names the Florida Attorney General as a respondent. Rule 2(a) of the Rules
Governing Section 2254 Cases in the United States District Courts provides that applicants in "present
custody" seeking habeas relief should name "the state officer having custody of the applicant as
respondent." *Rumsfeld v. Padilla*, 542 U.S. 426, 435–36 (2004). If an incarcerated petitioner challenges
his confinement, "the proper respondent is the warden of the facility where the prisoner is being held,
not the Attorney General or some other remote supervisory official." *Rumsfeld*, 542 U.S. at 436.
Because the proper respondent is the Secretary of the Florida Department of Corrections, the Florida
Attorney General is dismissed from this case.